IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| I-MAB BIOPHARMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-276-CJB |
| | ) | |
| INHIBRX, INC. and BRENDAN ECKELMAN, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Pending before the Court in this trade secret misappropriation case is Defendants Inhibrx, Inc. ("Inhibrx") and Brendan Eckelman's ("Dr. Eckelman, and collectively with Inhibrx, "Defendants") "Motion for Reconsideration of the Court's August 8, 2022 Memorandum Opinion" ("Motion"). (D.I. 101) The Motion is opposed by Plaintiff I-Mab Biopharma ("I-Mab" or "Plaintiff"). For the reasons set out below, the Court DENIES the Motion.

### I. BACKGROUND

The Court incorporates by reference its discussion of the factual background regarding this case that was set out in its August 8 Memorandum Opinion (the "August 8 MO"). (D.I. 97 at 2-5) Because the parties are well familiar with the facts of the case and desire a timely decision on the Motion, the Court will assume familiarity with those facts in its decision below. In Section III, the Court will make references to certain additional facts only to the extent they are needed for context.

On August 15, 2022, Defendants filed the instant Motion. (D.I. 101) The Motion was fully briefed as of August 29, 2022. (D.I. 110)

### II. STANDARD OF REVIEW

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly-discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotation marks and citation omitted).  The moving party has a difficult burden to meet in order to demonstrate that such a motion should be granted.  *Folks v. Danberg*, Civ. Action No. 09-103-GMS, 2012 WL 37228, at *1 (D. Del. Jan. 6, 2012).  That party must show that one of the following circumstances is at play:  (1) there has been an intervening change in the controlling law; (2) new evidence is now available that was not available when the court granted the motion at issue; and/or (3) there is a need to correct a "clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café*, 176 F.3d at 677; *Folks*, 2012 WL 37228, at *1.  Motions for reconsideration should "only be granted sparingly[,]" *Kavanagh v. Keiper Recaro Seating, Inc.*, No. Civ.A. 98-556-JJF, 2003 WL 22939281, at *1 (D. Del. July 24, 2003), such as in situations where a court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension[,]" *Dupree v. Corr. Med. Servs.*, Civ. No. 10-351-LPS, 2015 WL 7194438, at *2 (D. Del. Nov. 16, 2015) (internal quotation marks, citation and brackets omitted); *see also Folks*, 2012 WL 37228, at *1.

### III.  DISCUSSION

With their Motion, Defendants argue that in its August 8 MO, the Court committed clear errors of law that would amount to a manifest injustice if not corrected.  This occurred, according to Defendants, when the Court set out its reasoning as to why it could not decide the *forum non conveniens* portion of Defendants' motion to dismiss (the "motion to dismiss") without first making a factual determination (after an evidentiary hearing is held) regarding whether Dr. Eckelman was an employee of an I-Mab competitor at the time he signed the Undertaking.  (D.I.

101; D.I. 110 at 2; *see also* D.I. 97 at 9-12)  In explaining why the Court concludes that the Motion is not well taken,[1] and to provide some guidance to the parties regarding the upcoming evidentiary hearing, the Court makes a few points below:

- Defendants start by suggesting that the Court erred when it "use[d] the wrong legal standard to determine the enforceability of the forum selection clause [in the relevant Confidentiality Order, or 'CO'.]" (D.I. 101 at 4) Defendants explain that "even in cases of fraudulent inducement, unless the purported fraud was specific to the forum selection clause, Delaware courts consistently have held that the provision is nevertheless enforceable." (*Id*. at 3)  And they then argue that because there is no allegation that anyone (including Dr. Eckelman) made a fraudulent misstatement about the terms of the forum selection clause, then the clause was not procured by fraud and "is still enforceable." (*Id*. at 3-4)  In the Court's view, however, Defendants are misreading the key issue here.  There is, of course, Delaware law that stands for the proposition that forum selection clauses are *prima facie* valid and will generally be enforced, unless such enforcement would be "unreasonable and unjust" or where the clause is invalid "for such reasons as fraud and overreaching." *UBEO Holdings, LLC v. Drakulic*, C.A. No. 2020-0669-KSJM, 2021 WL 1716966, at *9 (Del. Ch. Apr. 30, 2021) (internal quotation marks and citations omitted).  But the Court did not make (and will not be making) a determination that the forum selection clause in the CO is not valid and enforceable (due to fraud or otherwise).  (D.I. 110 at 4) Indeed, as the Court noted in the August 8 MO, Plaintiff did not even challenge the enforceability of the forum selection clause when it contested the motion to dismiss. (D.I. 97 at 7)  Put differently, here there is no question that the CO's forum selection clause is valid and can be enforced *by someone*—e.g., by *parties* to the CO, like Plaintiff and Tracon.

---

[1] The Court disagrees with Plaintiff's argument that the Motion is not ripe. Plaintiff argued that this was so because:  (1) the Motion bears on the *forum non conveniens* portion of Defendants' motion to dismiss; but (2) the Court has not finally decided that issue. (D.I. 110 at 7-8)  Yet if the Court had actually made a manifest error in its legal reasoning in the August 8 MO, then fixing that error could mean that the motion to dismiss *should have already been decided* in Defendants' favor.  So the Motion seems ripe to the Court.

- Instead, the key remaining question at issue here is whether Dr. Eckelman has *standing* to be able to claim the benefit of that (presumably enforceable) forum selection clause. (*Id*. at 7-8; *see also* D.I. 110 at 4, 6) And this question will turn on whether Dr. Eckelman is rightly considered, pursuant to Delaware law, to be a *party* to the CO (or, alternatively, an *intended third-party beneficiary* of that agreement). (D.I. 97 at 8) Now, had the facts surrounding Dr. Eckelman's connection to the contract at issue been straightforward, this would not have been a difficult call to make. For example, if Dr. Eckelman had negotiated the terms of a contract with Plaintiff's representatives (i.e., a contract via which each side obtained benefits and accepted burdens), and then had signed such a contract along with Plaintiff, there would be little doubt that Dr. Eckelman would be rightly considered to be a party to that contract. And he would presumably thus get the benefit of such a contract's provisions—including any forum selection clause located therein.[2] But that is not what happened here with the CO. The CO is an agreement that was drafted by Plaintiff and Tracon; Dr. Eckelman did not sign that document. Instead, Dr. Eckelman signed a different piece

---

[2] Under Delaware law, there are various ways in which a person or entity can be considered to be a party to a contract. For example, this might be so if the contract itself describes the person or entity as a "party." *See Baker v. Impact Holding, Inc.*, Civil Action No. 4960-VCP, 2010 WL 1931032, at *3 (Del. Ch. May 13, 2010) (noting that the plaintiff "correctly asserts that he is not a party to the [contract]" because the contract's cover page listed the "parties" to that agreement, and although the plaintiff signed the agreement, he was not one of the listed parties—he signed the agreement only in a representative capacity). Here, the CO appears to have defined the "Parties" to the agreement as being the "parties to the litigation" in the Delaware Court of Chancery (i.e., Plaintiff and Tracon). (D.I. 62, ex. A at 1) Additionally, a person or entity is often (though not always) considered to be a party to a contract if the person or entity actually signed the contract itself. *See Sustainability Partners LLC v. Jacobs*, C.A. No. 2019-0742-SG, 2020 WL 3119034, at *5 (Del. Ch. June 11, 2020). Here, Dr. Eckelman did not sign the CO itself.

To be sure, as the Court noted in the August 8 MO, sometimes a person or entity can be considered a party to a contract when the person/entity signs a joinder to that contract. (D.I. 97 at 9 (citing cases)) But no one would suggest that the mere fact of signing a joinder, standing alone, is *always* sufficient to confer party status. Instead, the surrounding facts will matter too. *Cf. Braga Inv. & Advisory, LLC v. Yenni Income Opportunities Fund I, L.P.*, C.A. No. 2017-0393-AGB, 2020 WL 3042236, at *9-10 (Del. Ch. June 8, 2020). To take an extreme example, suppose that after the CO was entered, one of Plaintiff's attorneys mistakenly left a copy of the Undertaking on a bus, and a random person on the bus later picked up the Undertaking and signed it. No one would argue that this person was a party to the CO.

> of paper (the Undertaking) approximately eight months after the CO was agreed to, and he did so without Plaintiff's knowledge at the time. (D.I. 62, exs. A-B) So did signing the Undertaking under *those circumstances* make Dr. Eckelman a party to the CO? That is a much more difficult factual and legal question—and it is *that* standing-related question that the Court, *inter alia*, needs to decide after the upcoming evidentiary hearing, in order to be able to render a decision on Defendants' *forum non conveniens* motion.

- Defendants also argue that the Court made a mistake when it cited to *Green v. Wisneski*, C.A. No. 11817-MM, 2021 WL 4999348, at *2 (Del. Ch. Oct. 15, 2021), for the proposition that "a valid contract requires proof that the parties mutually assented to all essential terms." (D.I. 97 at 9-10; *see also* D.I. 101 at 2, 4) But the Court does not see anything wrong with its citation to *Green*. What the Court was trying to suggest with that citation was that, in these circumstances, whether Dr. Eckelman is rightly considered a party to the CO is going to turn on the parties' intent (including Plaintiff's intent) at the time of the signing of the CO/Undertaking.[3] That is, the Court was suggesting that if

---

[3] In the Motion, Defendants argue that "it is [] undisputed that Dr. Eckelman signed the Undertaking, thereby evidencing his intent to become a party to the [CO]." (D.I. 101 at 4) And the Court expects that it will be Defendants' position that when he signed the Undertaking, Dr. Eckelman himself thought that he had become a party to the CO. But the legal effect of Dr. Eckelman's signing of the Undertaking is an issue for the Court to decide, irrespective of whatever subjective belief Dr. Eckelman may have had about its meaning. *See Braga*, 2020 WL 3042236, at *10 & n.126.

Defendants go on to assert that "[w]hether [Plaintiff] intended to enter into the [CO] with Dr. Eckelman is irrelevant." (*Id.*) Yet as the Court has set out above, it believes that Plaintiff's intent to enter into the CO with a person such as Dr. Eckelman is very much relevant to the motion to dismiss. Indeed, just a few lines thereafter in its Motion, Defendants seem to acknowledge this fact, when they write that "if an expert *purports* to make[] a reasonable determination that he or she is not a competitor, I-Mab *has expressed its intent* to allow that person to become a party to the [CO]." (*Id.* (emphasis added)) Put differently, Defendants are here admitting that Plaintiff's intent is relevant to party status—they just disagree with the Court as to how that "intent" inquiry should be assessed. In Defendants' view, the CO indicates that Plaintiff *de facto* agreed and intended that any proposed expert who signed the Undertaking (and thus, who at that time necessarily must have *subjectively* determined in his or her own mind that he or she was not a competitor) would be a party to the CO. (*Id.* at 5 (Defendants asserting that "even if the expert's determination [as to whether they were a competitor] is fraudulent, the forum selection clause should still be enforced")) The Court disagrees. Instead, in the Court's

5

the signatories to the CO *intended* that someone like Dr. Eckelman could become a party to that agreement by signing the Undertaking, then that will almost certainly mean that Dr. Eckelman was, in fact, a party to the CO—and that he thus has standing to hold Plaintiff to the terms of the forum selection clause at issue. *See Braga Inv. & Advisory, LLC v. Yenni Income Opportunities Fund I, L.P.*, C.A. No. 2017-0393-AGB, 2020 WL 3042236, at *9-10 & n.126 (Del. Ch. June 8, 2020); *cf. Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, C.A. No. 5589-VCP, 2014 WL 2919333, at *24-25 (Del. Ch. June 25, 2014) (applying New York law and concluding that an entity ("Meso") was not a party to a license agreement, and in doing so, noting that the issue turned on the fact that the two original signatory entities to that agreement "did not intend that [Meso's signing of a separate] consent [document] would make Meso a party to the [agreement] as a whole or to the enforcement provisions of Article 2" of the agreement). And whether the parties to the CO intended that a person like Dr. Eckelman could be a party to that agreement will, in turn, depend in significant part on the language of the CO itself (and particularly on the way the CO describes who is and is not considered to be a

---

view, this "intent" question will turn on an *objective* analysis of whether a reasonable person in the position of the parties would have thought that Dr. Eckelman would be a party to the agreement. *See Braga*, 2020 WL 3042236, at *10 n.126; *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006); (D.I. 110 at 5); *see also Simmonds v. United States*, Civ. No. 16-0365-SLR, 2017 WL 713330, at *2 (D. Del. Feb. 22, 2017) ("Under Delaware law, parties enter into a contract when a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound by their agreement on all essential terms.") (internal quotation marks and citation omitted).

    Again, the Court offers an extreme example to explain why it believes that its conclusion here (i.e., that Dr. Eckelman's subjective mindset on this issue does not control) must be correct. Picture an individual who wished to sign on as an expert for Tracon, but who worked for a company that any rational person would acknowledge was an I-Mab competitor. To make the mental picture more vivid, assume this person was the CEO of a company whose name was "I-Mab's #1 Competitor." But then assume that when this person signed the Undertaking, he or she had the idiosyncratic (or even fraudulent, or bad faith) view, in his or her own subjective mind, that he or she was not, in fact, an I-Mab competitor. Would anyone conclude that the signatories to the CO intended that such a person could become a party to that agreement by signing the Undertaking? The answer must be "no." And so this all suggests that the expert's own *subjective* belief cannot be sufficient to resolve this question; instead, an *objective* assessment of the question must be made by the Court.

6

"Competitor"). *Cf. Meso Scale Diagnostics*, 2014 WL 2919333, at *15, *25.

- Next, Defendants argue that the Court wrongfully discounted their "estoppel argument." (D.I. 101 at 5) Defendants cite here to *Ishimaru v. Fung*, No. Civ.A. 929, 2005 WL 2899680 (Del. Ch. Oct. 26, 2005), which held that "[o]ne of the primary justifications for estopping a signatory from denying a non-signatory a right to arbitrate is that it is unfair for the signatory to have it both ways by attributing to a non-signatory the *duties of a contract signatory* for purposes of pressing claims but denying the non-signatory the right to invoke the arbitration clause." 2005 WL 2899680, at *18 (emphasis added). But as Plaintiff notes, this is not a situation where Plaintiff is (on the one hand) bringing a breach of contract claim against Dr. Eckelman based on the CO, and then (on the other hand) denying him the benefit of the forum selection clause found in that very same contract. (D.I. 110 at 7) In that kind of scenario, surely *Ishimaru*'s estoppel rationale would work against Plaintiff. Instead, here Plaintiff is making the opposite point—its entire standing argument is premised on the position that Dr. Eckelman is *not* a party to the CO (i.e., that Dr. Eckelman could not breach the CO even if he wanted to). Now, to be sure, Plaintiff looks to the text of the CO (particularly what the CO has to say about "Competitor" status) in order to help assess the question of standing. But so too do Defendants. And the fact that the CO's text may help resolve intent-related questions pertinent to the standing inquiry seems a far cry from the estoppel-related concerns at issue in *Ishimaru*. *Cf. Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 772 (Del. Ch. 2014).

- Nor does the Court agree with Defendants' assertion that the trade secret misappropriation "claims against them are identical and arise from and are related to the [CO]" and that this means that Plaintiff is estopped from arguing that Dr. Eckelman cannot get the benefit of the CO's forum selection clause. (D.I. 101 at 6) In its operative complaint, Plaintiff is not asserting that the legal basis for its trade secret misappropriation claims stems from a *contractual right* embodied in the CO. Instead, there Plaintiff is claiming that: (1) it provided Dr. Eckelman with its trade secrets; (2) Dr. Eckelman had *federal and state statutory duties* not to misappropriate those trade secrets, but

      violated those duties.  (D.I. 110 at 7; *see also* D.I. 49 at ¶¶ 175-201); *cf. Vichi*, 85 A.3d at 772.

- Lastly, the Court believes that what it has said above and what it concluded in the August 8 MO is all correct as a matter of law.  That said, the Court acknowledges that some of the legal issues at play here are complicated.  But even if it turns out that the Court did commit a legal error in the August 8 MO, the point is that Defendants have not currently demonstrated that any such error was "clear" or "manifest."  *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 311-12 (3d Cir. 2018).  And that is what is required in order to sustain a motion for reconsideration.

## IV.  CONCLUSION

For the foregoing reasons, the Motion is DENIED.

Dated: October 25, 2022

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE