IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| I-MAB BIOPHARMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-276-CJB |
| | ) | |
| INHIBRX, INC. and BRENDAN ECKELMAN, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

In this case, Plaintiff I-Mab Biopharma ("I-Mab" or "Plaintiff") brings trade secret misappropriation claims against Defendants Inhibrx, Inc. ("Inhibrx") and Brendan Eckelman ("Dr. Eckelman" and collectively with Inhibrx, "Defendants"). Presently pending before the Court is Plaintiff's motion to exclude certain opinions offered by Defendants' damages expert Dr. Richard Manning (the "Motion"). (D.I. 343) I-Mab opposes the Motion. For the reasons set forth below, the Motion is GRANTED-IN-PART and DENIED-IN-PART (with the exception of the portion of the Motion relating to Dr. Manning's alternative damages theory, which the Court will take up when it considers Plaintiff's motion to exclude the opinions of Dr. Roland Newman, (D.I. 344)).[1]

**I.  BACKGROUND**

I-Mab commenced this action on March 1, 2022. (D.I. 2) The operative First Amended Complaint ("FAC"), filed on May 12, 2022, contains two causes of action, both for trade secret misappropriation against both Defendants: Count I, which alleges a violation of the federal

---

[1]  The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 89)

Defend Trade Secrets Act ("DTSA"), and Count II, which alleges a violation of the Delaware Uniform Trade Secrets Act. (D.I. 49 at ¶¶ 175-201) Plaintiff asserts that Defendants misappropriated nine trade secrets (that correspond to molecules designed to treat cancer) that are referred to herein as Trade Secret 1, Trade Secret 2, Trade Secret 4, Trade Secret 5, Trade Secret 6, Trade Secret 7, Trade Secret 8, Trade Secret 9 and Trade Secret 10. (*See, e.g.*, *id.* at ¶¶ 50, 59-70; D.I. 337, ex. 6 at 7-23)[2]

Plaintiff filed the instant Motion on June 14, 2024. (*See* D.I. 331) The Motion was fully briefed as of July 24, 2024. (D.I. 383) Trial is set for October 28, 2024. (D.I. 301 at 2)

The Court here writes primarily for the parties, and so any additional facts relevant to this Memorandum Order will be discussed in Section III below.

**II.   STANDARD OF REVIEW**

The Court has frequently set out the relevant standard of review for assessing a motion, like this one, filed pursuant to Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). One such instance came in *Integra LifeScis. Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2018 WL 1785033, at *1-2 (D. Del. Apr. 4, 2018). The Court incorporates by reference those legal standards set out in *Integra*, and will follow them herein. To the extent that additional related legal principles regarding Rule 702 and *Daubert* are relevant, the Court will set those out in Section III.

**III.   DISCUSSION**

With its Motion, Plaintiff seeks to exclude three categories of Dr. Manning's opinions. The Court will take up two of these categories below, and will reserve decision on the third

---

[2]   Plaintiff has dropped Trade Secret 3 from the case. (D.I. 367 at 7 n.6; D.I. 408 at 15 n.14)

category until it resolves Plaintiff's motion to exclude the opinions of Dr. Newman (the "Newman *Daubert* motion").[3]

### A.   Dr. Manning's reliance on the "Book of Wisdom" doctrine

Under the reasonable royalty framework of damages permitted under the DTSA, parties rely upon a hypothetical negotiation analysis to "attempt to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before [misappropriation] began." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (brackets and internal quotation marks and citation omitted);[4] *see also Vt. Microsys., Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996) ("A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff. By means of a 'suppositious meeting' between the parties, the court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred."). The hypothetical negotiation must attempt to "recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). However, the analysis "permits and often requires a

---

[3] One of Plaintiff's arguments is that Dr. Manning's alternative damages theory should be excluded because Dr. Manning relied only on a conversation with Dr. Newman in support. (D.I. 331 at 11-12) Plaintiff also seeks to exclude Dr. Newman's related opinion in the Newman *Daubert* motion. (*Id.* at 17-20) For efficiency's sake, the Court will therefore take up this portion of the Motion at the same time that it assesses the Newman *Daubert* motion.

[4] One court has noted that "caselaw on how to determine a reasonable royalty for misappropriated trade secrets . . . is scarce" and therefore parties in trade secret misappropriation cases "understandably rely largely on well-trodden caselaw from the patent infringement context[.]" *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, Case No. 1:17-cv-01973, 2021 WL 6690279, at *2 (N.D. Ill. Dec. 14, 2021). At times herein, then, the Court will cite to a discussion of the relevant law in this area that is drawn from opinions in patent litigation cases, as opposed to trade secret misappropriation cases.

court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). Facts that post-date the hypothetical negotiation may sometimes be relied upon in a reasonable royalty analysis as part of the "Book of Wisdom." *Cirba Inc. v. VMware, Inc.*, Civil Action No. 19-742-LPS, 2021 WL 7209447, at *2 (D. Del. Dec. 14, 2021); *see also Sinclair Refin. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933) ("[A] different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect.").

Plaintiff asserts that Dr. Manning's opinions based on events that occurred years after the date of the hypothetical negotiation in November 2021 should be excluded because he improperly utilizes the Book of Wisdom. (D.I. 331 at 13-15; D.I. 383 at 8-10) According to Plaintiff, while the Book of Wisdom would permit an expert to rely on post-negotiation evidence to demonstrate a party's actual state of mind in November 2021, Dr. Manning does not rely on such evidence in this way—and instead improperly uses it to *replace* the inquiry into what the parties would have anticipated. (D.I. 331 at 13; D.I. 383 at 8) Plaintiff asserts that Dr. Manning improperly uses the Book of Wisdom with respect to two types of post-negotiation evidence: (1) evidence regarding Inhibrx's decision to terminate INBRX-105 in January 2024 ("opinions relating to INBRX-105's termination") and (2) changes at I-Mab that took place in 2022 through 2024 ("opinions relating to later-occurring events at I-Mab"). (D.I. 331 at 13-15) The Court will take up these categories in turn below.

        1.        **Opinions relating to INBRX-105's termination**

The Court will not exclude Dr. Manning's opinions relating to INBRX-105's termination for two main reasons. First, as Defendants point out, it was Plaintiff's damages expert Mr. John R. Bone who initially opined about INBRX-105's termination, stating that it "does not change the parties' perspectives and negotiating positions as of a hypothetical negotiation in November 2021." (D.I. 368, ex. 3 at ¶ 91 n.234 (*cited in* D.I. 364 at 15)) As a general matter, it is of course appropriate for an expert's rebuttal report to respond to another expert's opinions. *See, e.g.*, *Shure Inc. v. ClearOne, Inc.*, Civil Action No. 19-1343-RGA-CJB, 2021 WL 7209740, at *7-8 (D. Del. Oct. 5, 2021). And Dr. Manning does just that in at least certain of the challenged portions of his report. (*See, e.g.*, D.I. 334, ex. 1 at ¶ 79 (explaining that Mr. Bone's position regarding INBRX-105's termination "is contrary to economic logic" because "while Inhibrx may not have known with certainty as of November 2021 that it would terminate the development of INBRX-105, it would have known such an outcome would have been a realistic possibility, and thus would impact its willingness to pay for I-Mab's alleged trade secrets"))[5]

Beyond that, Plaintiff's argument is that at the time of the hypothetical negotiation, Defendants viewed INBRX-105 "as having significant value" and therefore the decision to terminate the program in January 2024 does not reflect what the parties were thinking in November 2021 (and thus Dr. Manning's related opinions must be excluded). (D.I. 331 at 13-14; D.I. 383 at 8-9) But Defendants are of course permitted to point to evidence to rebut the notion that they viewed INBRX-105 as having significant value in November 2021. Indeed, Defendants point out that Plaintiff's own experts opine that leading up to the hypothetical

---

[5] Mr. Bone also opined in his opening report that Inhibrx's decision to terminate INBRX-105 "may be litigation-driven[.]" (D.I. 368, ex. 3 at ¶ 91 n.234) Some of Dr. Manning's opinions at issue properly respond directly to that inference. (*See, e.g.*, D.I. 334, ex. 1 at ¶ 80; *id.*, ex. 3 at ¶¶ 3-4)

5

negotiation, Inhibrx was concerned about INBRX-105's likelihood of success. (D.I. 364 at 16-17 (citing D.I. 368, ex. 3 at ¶ 114; D.I. 368, ex. 7 at 159-60 (Dr. Grabstein testifying that in Inhibrx's documents before November 2021 "they were discussing the future of the product in a relatively pessimistic tone")))

In that vein, Defendants argue that Dr. Manning's opinions relating to INBRX-105's termination are consistent with Defendants' views in November 2021 that there was much uncertainty regarding the development of INBRX-105. (*Id.* at 17, 19 ("[T]he termination of INBRX-105 reflects, at least in part, the parties' perceived value of INBRX-105 at the time of Mr. Bone's hypothetical negotiation."); *see also, e.g.*, D.I. 334, ex. 1 at ¶ 107; *id.*, ex. 3 at ¶ 3) This is not an improper use of the Book of Wisdom. (*See* D.I. 331 at 13 (Plaintiff acknowledging that post-negotiation information can be used in this case to show a party's state of mind in November 2021)) In the end, it will be up to the jury to ultimately decide, based on *all* of the evidence, how Defendants viewed the INBRX-105 program at the time of the hypothetical negotiation. *Cf. Trs. of Univ. of Pa. v. Eli Lilly & Co.*, Civ. No. 15-6133, 2022 WL 3973276, at *16-18 (E.D. Pa. Jan. 14, 2022) (rejecting the plaintiff's motion to exclude certain testimony as unreliable for improperly opening the Book of Wisdom, where the parties "would have recognized the possibility that all or some of the '558 Patent Claims might be found invalid" and therefore plaintiff's "arguments . . . go to the weight of [the expert's] opinion, not admissibility"); *Amgen Inc. v. Hospira, Inc.*, Civil Action No. 15-839-RGA, 2017 WL 3927600, at *4 (D. Del. Sept. 7, 2017) (rejecting the plaintiff's argument that defendant's damages expert's "analysis improperly replaces the hypothetical negotiation's inquiry into what the parties would have expected at the time of the negotiation with a 'backward-looking inquiry' into what actually happened later" as unpersuasive, because consideration of "book of wisdom" evidence is

permissible in this context), *reconsideration granted on other grounds, judgment vacated in part*, 2017 WL 10088325 (D. Del. Sept. 20, 2017); *BASF Corp. v. Aristo, Inc.*, No. 2:07 CV 222 PPS, 2012 WL 2529213, at *4 (N.D. Ind. June 29, 2012) ("As should be clear, one of the foundational questions that the jury will have to grapple with relating to damages is how likely it was that Aristo would be successful in breaking into the OEM market with the MISO Coater. BASF's expert says it was very likely that Aristo would break into the OEM and his damages numbers therefore reflect that fact; Aristo's expert, on the other hand, says it wasn't likely at all (since it didn't actually happen). At bottom, the likelihood of Aristo's success is a question of fact for a jury to decide.").[6]

### 2. Opinions relating to later-occurring events at I-Mab

Plaintiff also moves to exclude Dr. Manning's reliance on changes at I-Mab that occurred after the November 2021 hypothetical negotiation, including its decreasing stock price in 2022, termination of its partnership with AbbVie in September 2023 and I-Mab's restructuring in April 2024; Plaintiff argues that this is improper use of the Book of Wisdom. (D.I. 331 at 15; D.I. 383 at 10) The Court will not strike these opinions either.

---

[6] Defendants also contend that Dr. Manning's opinions relating to INBRX-105's termination are relevant to the issue of the extent of the use of the asserted trade secrets, which, in turn, is relevant to a reasonable royalty determination. (D.I. 364 at 19-20); *see also, e.g.*, *Int'l Med. Devices, Inc. v. Cornell*, Case No.: 2:20-cv-03503-CBM (RAOx), 2024 WL 1363690, at *6 (C.D. Cal. Mar. 28, 2024) ("The nature and extent of Defendants' use of IMD's trade secrets weighs in favor of a reasonable royalty higher than that proposed by Dr. Hatch."); *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, Civil Action No. 15-cv-01541-CMA-MLC, 2018 WL 571877, at *6 (D. Colo. Jan. 26, 2018) (noting that a *Georgia-Pacific*-related factor for determination of a reasonable royalty rate is "the extent to which the defendant has made use of the trade secret"). Plaintiff only responds to this point briefly in a footnote that simply distinguishes the case that Defendants cited without really grappling with the premise of Defendants' argument in this regard. (D.I. 383 at 9 n.6)

The two paragraphs at issue in Dr. Manning's rebuttal report discuss I-Mab's termination of its partnership with AbbVie and related decreasing stock price, and they are clearly responding to points made by Plaintiff's experts regarding I-Mab's partnership with AbbVie. (D.I. 368, ex. 4 at ¶¶ 38-39; *see also id.*, ex. 3 at ¶¶ 23, 51; *id.*, ex. 12 at ¶ 155) Similarly, the two paragraphs at issue in Dr. Manning's supplemental report relate to I-Mab's restructuring and respond to points made by Mr. Bone regarding this event. (*Id.*, ex. 8 at ¶¶ 7-8; *id.*, ex. 13 at ¶¶ 7-9)[7] As discussed above, it is proper for Dr. Manning to respond to opinions raised by Plaintiff's experts.

### B. Dr. Manning's opinion regarding "actual damages"

The DTSA provides that damages for misappropriation may be quantified in two ways: (1) damages for actual loss plus unjust enrichment or (2) a reasonable royalty. 18 U.S.C. § 1836(b)(3)(B). Dr. Manning opines that he cannot rule out the conclusion that Plaintiff's "actual damages" are zero (the "zero damages opinion"). (D.I. 334, ex. 1 at ¶ 15(h)) Plaintiff argues that Dr. Manning's zero damages opinion should be excluded as irrelevant because Plaintiff's damages claims are not based on actual loss, and even if Plaintiff's actual damages were zero, Plaintiff would still be entitled to a reasonable royalty. (D.I. 331 at 16; D.I. 383 at 7) In response, Defendants assert that with the zero damages opinion, Dr. Manning is "not offering an opinion on actual losses, but instead references 'actual damages' as reflective of damages I-Mab may be awarded"—in other words, according to Defendants, the zero damages opinion is an opinion that Plaintiff's *reasonable royalty* damages may be zero. (D.I. 364 at 23; *see also id.* at

---

[7] The Court has previously ruled that the October 2024 trial should cover events occurring prior to, but not later than, April 2, 2024 (so that the fact that I-Mab Shanghai had not participated in discovery would not impact the matters to be addressed at trial). (D.I. 340; *see also* D.I. 408 at 3)

8

11 (Defendants noting that "Dr. Manning's professional opinion is that . . . $0 is the lower bound on reasonable royalty damages"))

The Court agrees with Plaintiff that Defendants are ignoring the "actual words" that Dr. Manning used, as he did not opine in the zero damages opinion that Plaintiff's "*reasonable royalty* damages" are zero (nor do Defendants point to anywhere else in Dr. Manning's report where he opined that Plaintiff's reasonable royalty damages should be zero).  (*See* D.I. 383 at 7) Nor do Defendants explain why an opinion that Plaintiff's "actual damages . . . are zero" should be interpreted to actually mean that Plaintiff's "reasonable royalty damages are zero." *See, e.g.*, *Nephron Pharms. Corp. v. Hulsey*, Case No. 6:18-cv-1573-Orl-31LRH, 2021 WL 1113789, at *2 (M.D. Fla. Jan. 11, 2021) ("Both the DTSA and FUTSA state that a plaintiff who establishes trade secret misappropriation may recover actual damages and unjust enrichment *or*, in lieu of damages measured by any other methods, a reasonable royalty.") (emphasis in original) (internal quotation marks and citation omitted).  Moreover, the Court agrees with Plaintiff that Dr. Manning does not seem to provide any facts or analysis in support of the zero damages opinion. (D.I. 383 at 7)  Thus, Defendants have not sufficiently explained how, *inter alia*, Dr. Manning's zero damages opinion is relevant in light of Plaintiff's argument to the contrary; therefore it must be excluded.[8]  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("Rule 702 requires that the expert testimony must fit the issues in the case.  In other words, the

---

[8]     In its reply brief, Plaintiff also briefly contends that Dr. Manning's "firm 'upper bound'" opinion is improper and should be excluded.  (D.I. 383 at 7; *see also, e.g.*, D.I. 334, ex. 1 at ¶ 15(f) (Dr. Manning offering an opinion that certain amounts place a "firm upper bound" on the amount that would have been negotiated in the hypothetical negotiation))  This argument could have been made in Plaintiff's opening brief but was not, and arguments made for the first time in a reply brief are waived.  *Allscripts Healthcare, LLC v. Andor Health, LLC*, Civil Action No. 21-704-MAK, 2022 WL 3017364, at *7 & n.53 (D. Del. July 29, 2022) (citing cases).  So the Court will not further discuss this issue here.

expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART as described above (with the exception of the portion of the Motion relating to Dr. Manning's alternative damages theory, which the Court will take up when it considers the Newman *Daubert* Motion).

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order.  Any such redacted version shall be submitted no later than **October 22, 2024** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure."  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  October 17, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE