IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| I-MAB BIOPHARMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-276-CJB |
| ) | |
| INHIBRX, INC. and BRENDAN ) | |
| ECKELMAN, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM ORDER

In this case, Plaintiff I-Mab Biopharma ("I-Mab" or "Plaintiff") brings trade secret misappropriation claims against Defendants Inhibrx, Inc. ("Inhibrx") and Brendan Eckelman ("Dr. Eckelman" and collectively with Inhibrx, "Defendants"). Presently pending before the Court is Plaintiff's motion to exclude certain opinions offered by Defendants' technical expert Dr. Roland Newman (the "Motion"). (D.I. 344) Defendants oppose the Motion. For the reasons set forth below, the Motion is GRANTED-IN-PART and DENIED-IN-PART.[1]

### I.   BACKGROUND

I-Mab commenced this action on March 1, 2022. (D.I. 2) The operative First Amended Complaint ("FAC"), filed on May 12, 2022, contains two causes of action, both for trade secret misappropriation against both Defendants: Count I, which alleges a violation of the federal Defend Trade Secrets Act, and Count II, which alleges a violation of the Delaware Uniform Trade Secrets Act. (D.I. 49 at ¶¶ 175-201) Plaintiff asserts that Defendants misappropriated nine trade secrets (that correspond to molecules designed to treat cancer) that are referred to

---

[1] The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 89)

herein as Trade Secret 1, Trade Secret 2, Trade Secret 4, Trade Secret 5, Trade Secret 6, Trade Secret 7, Trade Secret 8, Trade Secret 9 and Trade Secret 10. (*See, e.g.*, *id.* at ¶¶ 50, 59-70; D.I. 337, ex. 6 at 7-23)[2]

Plaintiff filed the instant Motion on June 14, 2024. (*See* D.I. 331) The Motion was fully briefed as of July 24, 2024. (D.I. 383) Trial is set for October 28, 2024. (D.I. 301 at 2)

The Court here writes primarily for the parties, and so any additional facts relevant to this Memorandum Order will be discussed in Section III below.

## II. STANDARD OF REVIEW

The Court has frequently set out the relevant standard of review for assessing a motion, like this one, filed pursuant to Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). One such instance came in *Integra LifeScis. Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2018 WL 1785033, at *1-2 (D. Del. Apr. 4, 2018). The Court incorporates by reference those legal standards set out in *Integra*, and will follow them herein. To the extent that additional related legal principles regarding Rule 702 and *Daubert* are relevant, the Court will set those out in Section III.

## III. DISCUSSION

With its Motion, Plaintiff seeks to exclude four categories of Dr. Newman's opinions. The Court will take these up below in turn.

### A. Dr. Newman's redevelopment opinion

One of the ways in which a claim for damages for trade secret misappropriation can be quantified is by measuring unjust enrichment; to that end, unjust enrichment can be assessed by

---

[2] Plaintiff has dropped Trade Secret 3 from the case. (D.I. 367 at 7 n.6; D.I. 408 at 15 n.14)

identifying development costs that were avoided by the misappropriator but would have been incurred, if not for the misappropriation (i.e., "avoided costs"). *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co.*, 47 F.4th 156, 164 (3d Cir. 2022). In his rebuttal expert report, Dr. Newman offers the following opinion regarding Defendants' avoided costs (the "redevelopment opinion"):

> For a relatively small amount of money, any company could make the I-Mab molecules and reproduce the preclinical data associated with the alleged Trade Secrets. This would involve a non-GLP production and characterization of approximately 20g of the molecule using standard antibody expression and purification processes known in the field. This would cost approximately $65,000. This material could be used to generate pharmacokinetic and toxicity data in nonhuman primates for a cost of $225,000. Therefore, I believe the preclinical data related to the alleged trade secrets could be recreated for approximately $290,000.

(D.I. 334, ex. 5 at ¶ 193) Plaintiff contends that Dr. Newman's redevelopment opinion is unreliable and lacks "fit" (and should therefore be excluded) because "the number was pulled out of thin air, the opinion ignores known R&D expenses, and the opinion fails to account for numerous categories of trade secret data and analysis." (D.I. 331 at 17; *see also* D.I. 383 at 12)

The Court agrees that Dr. Newman's redevelopment opinion does not pass muster, even under *Daubert*'s liberal standard. This is so, in the Court's view, for two reasons.

First, the paragraph at issue does not give any hint as to where Dr. Newman derives the cited cost data from.[3] Defendants attempt to fill in the gaps, asserting that Dr. Newman "relies on price quote information from an Inhibrx spreadsheet (INBRX145753) to reach his estimate of costs involved in a study to generate preclinical data for the alleged trade secret molecules from

---

[3] Defendants argue that Dr. Newman's work in developing this opinion "mirrored" the work of Plaintiff's damages expert Mr. John R. Bone. (D.I. 364 at 25) But Mr. Bone's opinion, in contrast to Dr. Newman's redevelopment opinion, expressly sets out the steps that he performed to come up with the numbers he relies upon—including the specific information and documents that he utilized in this process. (D.I. 368, ex. 3 at ¶¶ 64-65)

cynomolgus monkeys." (D.I. 364 at 25; *see also id.* at 26 ("Dr. Newman reviewed quotes received by Inhibrx for studies that he deemed comparable to the studies that would be necessary to re-create the trade secrets.")) But the redevelopment opinion does not cite to this spreadsheet, nor does it reference any related quotes from the spreadsheet. And, as Plaintiff notes, it is certainly not clear on its face how this spreadsheet (which spans many pages) supports Dr. Newman's opinion.[4] (D.I. 383 at 12; *see also* D.I. 334, ex. 26) Indeed, during Dr. Newman's deposition, he testified that he did not review any invoices in coming up with his opinion, and instead he came up with the number based on discussions with Defendants' damages expert Dr. Richard Manning and with Dr. Eckelman, who gave him figures that were averages of quotes that they had access to. (D.I. 334, ex. 7 at 133-34)[5] The redevelopment opinion does not provide any details regarding these discussions (nor even reference them). In the end, even considering this deposition testimony alongside Dr. Newman's redevelopment opinion, there is simply not enough here to evince a reliable methodology with regard to the derivation of these numbers. *Cf. Guardant Health, Inc. v. Found. Med., Inc.*, Civil Action No. 17-1616-LPS-CJB, Civil Action No. 17-1623-LPS-CJB, 2020 WL 2461551, at *19 (D. Del. May 7, 2020) ("Because no concrete tie to the specific 50% value is explained, Dr. Becker's and Dr. Cooper's opinions lack a sufficiently reliable methodology.") (citing cases), *report and recommendation adopted*, 2020 WL 5994155 (D. Del. Oct. 9, 2020); *GPNE Corp. v. Apple, Inc.*, Case No. 12-CV-02885-

---

[4] The section of Dr. Newman's report listing the materials that he considered does apparently include the spreadsheet at issue. (*See* D.I. 331 at 18 n.11)

[5] Dr. Newman also testified that, in crafting his redevelopment opinion, he relied on his own experience as to what these costs were historically. (D.I. 334, ex. 7 at 134) But Dr. Newman did not provide any details regarding any particular historical example that he was referring to here. (*Id.*)

LHK, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (finding that an expert's opinion was not reliable, where his 30 years of experience alone did not constitute a testable methodology, as experts "may not be a black box into which data is fed at one end and from which an answer emerges at the other" because "the Court must be able to see the mechanisms in order to determine if they are reliable and helpful") (internal quotation marks and citations omitted).

      Second, Dr. Newman's redevelopment opinion is also insufficient because he does not explain how it accounts for the different trade secrets at issue here. In other words, while "I-Mab's trade secrets pertain to multiple different molecules and comprise different amounts and types of data[,]" Dr. Newman estimates one cost for the recreation of data from conducting a preclinical monkey toxicity study—$290,000—and applies it to each trade secret. (*See* D.I. 331 at 18-19) But as Plaintiff noted, glaringly absent from Dr. Newman's opinion is any explanation as to how or why this single cost for conducting such a study would apply equally to each of the trade secrets at issue. Defendants did not cogently respond to this concern. (*See* D.I. 364 at 27) And so without any understandable explanation for how one cost for one type of study applies equally to all trade secrets at issue, Dr. Newman's redevelopment opinion "does not fit the issues to be tried and is not helpful." *AgroFresh Inc. v. Essentiv LLC*, C.A. No. 16-662 (MN), 2019 WL 9514565, at *1 (D. Del. Oct. 7, 2019) (granting the defendants' motion to preclude the testimony of plaintiff's damages expert who offered an avoided costs analysis for unjust enrichment damages in a trade secret misappropriation case, where the expert made "no attempt to establish a connection between any costs (or the final sums) with any of the trade secrets (or combinations thereof) that Plaintiff asserts were misappropriated by Defendants").

For these reasons, the Court grants Plaintiff's Motion with respect to Dr. Newman's redevelopment opinion.[6]

### B. Dr. Newman's opinions regarding Defendants' use of the trade secrets

Dr. Newman opines that with respect to Defendants' alleged use of Trade Secret 1, "no substantial changes were made in the clinical development path of INBRX-105" ("paragraph 116"). (D.I. 334, ex. 5 at ¶ 116) Plaintiff contends that this portion of paragraph 116 must be excluded because Dr. Newman cites to no supporting evidence and did not review Inhibrx's clinical protocol amendments. (D.I. 331 at 20-21 (citing D.I. 334, ex. 7 at 82, 86); D.I. 383 at 12) Relatedly, in response to Plaintiff's technical expert Dr. Kenneth Grabstein's opinion that Inhibrx altered its clinical trial protocol for INBRX-105 after the alleged misappropriation, Dr. Newman opines that the amendments that Inhibrx did make were "standard practices in running a clinical trial and no significant changes to the protocol were made" ("paragraph 118"). (D.I. 334, ex. 5 at ¶ 118) Plaintiff contends that this portion of paragraph 118 must be excluded because Dr. Newman does not have sufficient experience to opine regarding what is standard practice with respect to amending clinical protocols and did not review the protocol amendments. (D.I. 331 at 21; D.I. 383 at 12)

The Court does not agree that these opinions should be excluded. To take the issue regarding Dr. Newman's experience first, it is true that he testified that he did not have "direct experience" amending a clinical protocol. (D.I. 334, ex. 7 at 36) However, Dr. Newman has

---

[6] Plaintiff also moved to exclude the opinion of Defendants' damages expert Dr. Manning that relies on Dr. Newman's redevelopment opinion, (D.I. 331 at 11-12 (citing D.I. 334, ex. 1 at ¶ 72)), and this portion of Plaintiff's *Daubert* Motion regarding Dr. Manning's opinions, (D.I. 343), is likewise granted. (*See* D.I. 364 at 13 (Defendants arguing that Dr. Manning's reliance on Dr. Newman is proper because Dr. Newman relied on record evidence and a discussion with Dr. Eckelman))

extensive experience in the biotechnology industry, including experience in developing therapeutic antibodies and in the manufacturing, preclinical development and clinical planning phases.  (D.I. 368, ex. 2 at ¶¶ 3-6; *id.*, ex. 1 at 23-46)  This experience includes several years employed as Vice President and Chief Scientific Officer of Tanabe Research Labs USA ("Tanabe").  (*Id.*, ex. 2 at ¶ 3)  The Court recently set out the United States Court of Appeals for the Third Circuit's liberal standard for expert qualifications, and incorporates that discussion by reference herein.  (D.I. 457 at 3-4)  Pursuant to that standard, Dr. Newman surely has specialized skill or knowledge in this area that is greater than the average layman.  (*See, e.g.*, D.I. 334, ex. 7 at 33-35 (describing a clinical trial that Dr. Newman was involved in while at Tanabe, which included review of the clinical protocol))  And so the Court will therefore not exclude his testimony on this basis.  (*See* D.I. 457 at 8-9 (citing cases))

Plaintiff's other assertion—i.e., that these opinions must be excluded because Dr. Newman failed to consider crucial evidence—is not persuasive either.  In paragraph 116, Dr. Newman describes changes that *were made* in the clinical development path of INBRX-105, which establishes the basis for his opinion that no *substantial* changes were made.  (D.I. 334, ex. 5 at ¶ 116)  As for paragraph 118, Dr. Newman responds therein to certain opinions of Dr. Grabstein (and also cites to deposition testimony).  He describes the changes that were made to the clinical protocol (and why these changes were made) and opines that certain particular modifications are standard practice in running a clinical trial.  (*Id.* at ¶ 118)  This is appropriate rebuttal testimony that he is qualified to offer.  Any failure of Dr. Newman to review particular protocol amendments may be addressed with him during cross-examination.  *Davis v. Cisneros*, 1:21-CV-565-RP, 2024 WL 3799461, at *4 (W.D. Tex. Aug. 12, 2024) ("As for Park's assertion that Dr. Bowman ignored key evidence in reaching his conclusions, whether an expert

sufficiently considered all available evidence goes to the weight, not admissibility, of his opinion testimony.") (internal quotation marks and citation omitted).

      C.      **Dr. Newman's opinions about public disclosure**

Plaintiff next moves to exclude Dr. Newman's opinions that certain of I-Mab's trade secrets are disclosed in particular publications. (D.I. 334, ex. 5 at ¶¶ 122, 137, 140, 142, 153 (*cited in* D.I. 331 at 22)) According to Plaintiff, these opinions should be excluded because Dr. Newman does not identify where in these publications Plaintiff's trade secrets are disclosed, or because Dr. Newman's views are just incorrect. (D.I. 331 at 22-23; D.I. 383 at 13-15)

The Court will not exclude these opinions. Dr. Newman either includes screenshots of the portions of the publications at issue that he opines contain publicly disclosed information with respect to certain trade secrets, (D.I. 334, ex. 5 at ¶ 137, 142, 153), or explains what the publicly disclosed information is in the publication at issue, (*id.* at ¶ 122 (sequence of I-Mab's anti-TIGIT antibodies), ¶ 140 (pharmacokinetic data and initial toxicity data)). Plaintiff's gripes—i.e., that Dr. Newman relies on inapposite publications and failed to do a side-by-side comparison of Dr. Grabstein's identification of the trade secrets at issue to the publications, (D.I. 331 at 22-23)—can be explored with him on cross-examination. (D.I. 364 at 32); *see also Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 471 (D. Mass. 2017) (rejecting the plaintiff's position that a technical expert's analysis regarding the public disclosure of the trade secret at issue should be excluded, because although the expert's "analysis on this subject may be somewhat conclusory and underdeveloped . . . it has enough grounding and support to be

8

presented to the jury" and "plaintiff remains free to cross-examine [the expert] about such matters").[7]

### D. Dr. Newman's opinions on ownership and reasonable measures

Finally, Plaintiff argues that Dr. Newman's opinions regarding the ownership of Plaintiff's trade secrets and any reasonable measures to protect them in the time period after Plaintiff's corporate restructuring in April 2024 should be excluded, on lack-of-qualifications grounds. (D.I. 331 at 23-24) However, in light of the Court's ruling that the October 2024 trial should cover events occurring prior to, but not later than, the date of the divestiture, (*see* D.I. 340), the Court does not understand how post-divestiture reasonable measures are relevant to the conduct that will be at issue during trial, (*see, e.g.*, D.I. 420 at 18-19; D.I. 449 at 7). Therefore, this portion of the Motion is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED with respect to Dr. Newman's redevelopment opinion, and otherwise DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **October 24, 2024** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to

---

[7] Plaintiff also asserts that it would not be possible for Dr. Newman to identify where in the publications Plaintiff's trade secrets are disclosed because, as Dr. Grabstein explained, the publications at issue do not contain Plaintiff's trade secrets. (D.I. 331 at 22) "This kind of battle-of-the-experts[, however,] is a quintessential example of a dispute that cannot be resolved by a *Daubert* motion." *Brand Design Co., Inc. v. Rite Aid Corp.*, CIVIL ACTION NO. 22-1174, 2024 WL 643141, at *4 (E.D. Pa. Feb. 14, 2024).

judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: October 21, 2024

                                               *Christopher J. Burke*
                                               Christopher J. Burke
                                               UNITED STATES MAGISTRATE JUDGE