IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| I-MAB BIOPHARMA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-276-CJB |
| ) | |
| INHIBRX, INC. and BRENDAN ) | |
| ECKELMAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

In this case, Plaintiff I-Mab Biopharma ("I-Mab" or "Plaintiff") brings trade secret misappropriation claims against Defendants Inhibrx, Inc. ("Inhibrx") and Brendan Eckelman ("Dr. Eckelman" and collectively with Inhibrx, "Defendants"). Presently pending before the Court is Plaintiff's motion to exclude certain opinions offered by Defendants' forensic expert Dr. Eric Cole (the "Motion"). (D.I. 342) Defendants oppose the Motion. For the reasons set forth below, the Motion is GRANTED-IN-PART and DENIED-IN-PART.[1]

**I.   BACKGROUND**

I-Mab commenced this action on March 1, 2022. (D.I. 2) The operative First Amended Complaint ("FAC"), filed on May 12, 2022, contains two causes of action, both for trade secret misappropriation against both Defendants: Count I, which alleges a violation of the federal Defend Trade Secrets Act, and Count II, which alleges a violation of the Delaware Uniform Trade Secrets Act. (D.I. 49 at ¶¶ 175-201) Plaintiff asserts that Defendants misappropriated

---

[1]   The parties have jointly consented to the Court's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 89)

nine trade secrets (that correspond to molecules designed to treat cancer). (*See, e.g.*, *id.* at ¶¶ 50, 59-70; D.I. 337, ex. 6 at 7-23; *see also* D.I. 367 at 7 n.6; D.I. 408 at 15 n.14)

Plaintiff filed the instant Motion on June 14, 2024. (*See* D.I. 331) The Motion was fully briefed as of July 24, 2024. (D.I. 383) Trial is set for October 28, 2024. (D.I. 301 at 2)

The Court here writes primarily for the parties, and so any additional facts relevant to this Memorandum Order will be discussed in Section III below.

## II.   STANDARD OF REVIEW

The Court has frequently set out the relevant standard of review for assessing a motion, like this one, filed pursuant to Federal Rule of Evidence 702 ("Rule 702") and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993). One such instance came in *Integra LifeScis. Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2018 WL 1785033, at *1-2 (D. Del. Apr. 4, 2018). The Court incorporates by reference those legal standards set out in *Integra*, and will follow them herein. To the extent that additional related legal principles regarding Rule 702 and *Daubert* are relevant, the Court will set those out in Section III.

## III.   DISCUSSION

With its Motion, Plaintiff seeks to exclude four categories of opinions of Dr. Cole. The Court will take these up below in turn.

### A.   Opinions About Dr. Eckelman's State of Mind

Dr. Cole offers opinions such as the following in his report:

> • "It is my professional opinion that Dr. Eckelman did not delete the alleged confidential documents *with an intent* to destroy evidence[.]" (D.I. 334, ex. 8 at ¶ 8 (emphasis added));
>
> • "Dr. Eckelman deleted the TCON folder at the request of TRACON's counsel and . . . *truthfully represented his then-present*

*belief* that the confidential information had been deleted." (*Id.* at ¶ 86 (emphasis added));

• "Dr. Eckelman's initial representation that . . . he deleted or destroyed I-Mab's documents from his MacBook was not 'false.' The representation was *truthfully made* according to Dr. Eckelman's *then-present belief*." (*Id.* (emphasis added));

• "[T]he alleged transfer of data [to Dr. Eckelman's external hard drive] occurred *without Dr. Eckelman's knowledge* as he *believed* that the documents had been deleted[.]" (*Id.* at ¶ 89 (emphasis added));

• "[Mr. Daniel Roffman's opinion] ignores that Dr. Eckelman's *then-present belief* was that he had, in fact, deleted the relevant documents." (*Id.* at ¶ 90 (emphasis added)); and

• "Dr. Eckelman was aware of the external hard drive; *he just did not realize* that the I-Mab documents (that *he believed* had been deleted) would be found there." (*Id.* at ¶ 91 (emphasis added))

Plaintiff argues that these are opinions regarding Dr. Eckelman's knowledge, intent and state of mind, and that because expert witnesses are not permitted to testify regarding such issues, these opinions (and others like them in Dr. Cole's report) should be excluded.[2] (D.I. 331 at 25-27; D.I. 383 at 17) For their part, Defendants contend that Dr. Cole is not opining directly on Dr. Eckelman's state of mind but instead is "say[ing] that he has reviewed the record evidence in the case and that his opinion, based on that review, relates to his technical analysis of the metadata." (D.I. 364 at 34) Defendants point out that experts are permitted to testify regarding willfulness where their opinions draw on technical conclusions, and they argue that that is just what Dr. Cole is doing here. (*Id.* (citing *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, Case No. 8:14-cv-01352-

---

[2] Plaintiff specifically moves to exclude paragraphs 8, 67-71 and 82-91 of Dr. Cole's rebuttal report for this reason. (D.I. 331 at 27)

3

JLS-KES, 2019 WL 8138163, at *13 (C.D. Cal. Nov. 20, 2019), *aff'd*, 35 F.4th 1367 (Fed. Cir. 2022))).

As noted above, expert witnesses are not permitted to opine on a person's intent, motive or state of mind—such conclusions are "within the province of the jury[.]" *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, Case No. 10-cv-10578, 2016 WL 4396085, at *4 (E.D. Mich. Aug. 18, 2016); *see also Shire Viropharma Inc. v. CSL Behring LLC*, Civil Action No. 17-414 CONSOLIDATED, 2021 WL 1227097, at *5-6 (D. Del. Mar. 31, 2021) (noting that "[i]t is well settled that experts may not provide testimony concerning the 'state of mind' or 'culpability' of defendants, corporations, regulatory agencies, and others" and that an expert's testimony "cross[ed] the line" when he opined on the plaintiff's "subjective thought processes and motivations" as to whether it was "likely" that the plaintiff entity would have discontinued development of a drug product); *GREE, Inc. v. Supercell Oy*, Case No. 2:19-cv-00070-JRG-RSP, 2020 WL 4288350, at *2 (E.D. Tex. July 27, 2020); *AstraZeneca UK Ltd. v. Watson Lab'ys, Inc. (NV)*, C.A. No. 10-915-LPS, 2012 WL 6043266, at *2 (D. Del. Nov. 14, 2012). On the other hand, experts are permitted to opine regarding the underlying facts that may show a person's state of mind. *See, e.g.*, *GREE, Inc.*, 2020 WL 4288350, at *3 (explaining that while the expert could opine that certain ads directed users to perform a claim limitation, the expert could not opine that the defendant "actively and intentionally induced infringement[,]" because that phraseology would amount to providing an opinion about the defendant's intent) (internal quotation marks and citation omitted); *Pavo Sols. LLC*, 2019 WL 8138163, at *13 (explaining that while "experts may not testify that they have divined a party's intent because they are not mind-readers" they may "identify certain facts . . . from the record to support an inference of a particular intent") (internal quotation marks and citation omitted).

In light of these principles, the Court easily agrees with Plaintiff that the statements referenced above in Dr. Cole's report are improper. They are very clearly opining about Dr. Eckelman's state of mind. Thus, these statements, and others like them in the paragraphs that Plaintiff have identified, must be excluded.[3]

### B. Dr. Cole's Opinions Regarding the Timeliness of I-Mab's Assertion of its Trade Secrets

Dr. Cole offers opinions that reference the timeline regarding Plaintiff's one-month delay in alleging that Dr. Eckelman had violated the Confidentiality Order, (D.I. 334, ex. 8 at ¶¶ 8, 69-70), and further opines that this timeline (as well as Plaintiff's two-month delay in filing this action) "was unreasonable" with respect to Plaintiff's protection of its trade secrets, (*id.* at ¶¶ 62-64). Plaintiff asserts that these opinions must be excluded because they amount to an "improper collateral attack" on the applicable statutes of limitations, and because Dr. Cole is not a lawyer and has no expertise that would allow him to render opinions regarding the timeliness of lawsuits. (D.I. 331 at 27-28)

The Court agrees with Plaintiff that it is not proper for Dr. Cole to testify regarding any delay in filing suit. After Plaintiff pointed out that Dr. Cole is not qualified to provide subjective views regarding how quickly a party should file a complaint like the one at issue here,

---

[3] While the Court agrees that such state-of-mind opinions must be excluded from Dr. Cole's report, that does not necessarily mean that every portion of all of the paragraphs at issue in the Motion need be excluded. For example, paragraph 89, which is at issue in the Motion, includes the opinion that "the files were backed up automatically whenever the computer was plugged-in." (D.I. 334, ex. 8 at ¶ 89) That would be a proper factual opinion from Dr. Cole. Beyond that, however, the Court "declines to engage in a line-by-line analysis of [Dr. Cole's] report to explain which opinions are improper. Rather, to the extent [Dr. Cole's] testimony at trial fails to comply with the Court's holding[ here], [Plaintiff] may raise a contemporaneous objection to any such testimony." *See, e.g.*, *Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1030 (S.D. Cal. 2023).

Defendants really did not fight back. Instead, in their answering brief, Defendants seemed to basically concede this point—arguing that the "important delay" for Dr. Cole's opinion is the one month that Plaintiff waited to allege that Dr. Eckelman violated the Confidentiality Order, "not the delay to filing a civil suit[.]" (D.I. 364 at 36; *see also id*. at 35) The Court therefore grants this portion of Plaintiff's Motion as it relates to Dr. Cole's opinion that Plaintiff unreasonably delayed the filing of this lawsuit. (D.I. 334, ex. 8 at ¶ 64)

However, the Court will not exclude Dr. Cole's opinions that "reasonable measures to protect a company's trade secret information" in the circumstances at issue "would be to take immediate action to contain and remedy the past disclosure and prevent any further disclosures"—but that Plaintiff instead took one month to raise its concerns with Defendants. (*See, e.g.*, *id.* at ¶ 63) Such an opinion is not a collateral attack on the statute of limitations, nor does it relate to expertise that is solely in the purview of an attorney. Dr. Cole has over 25 years of experience in the cyber and technical information security industry, and in his various roles he has been "responsible for protecting organizations to minimize and prevent data breaches, in addition to responding to breaches post detection." (D.I. 368, ex. 16 at ¶¶ 12-32) Therefore, Dr. Cole seems qualified to render opinions regarding whether Plaintiff took reasonable measures to maintain the secrecy of the trade secrets at issue (and how a party's response to learning that its trade secrets were misappropriated impacts that analysis). (D.I. 364 at 36)[4]

---

[4] The Court has recently set out the United States Court of Appeals for the Third Circuit's liberal standard for expert qualifications, and it incorporates that discussion by reference herein. (D.I. 457 at 3-4)

      **C.**     **Dr. Cole's Opinions Regarding the Delaware Court of Chancery's Model Order**

Dr. Cole opines that Plaintiff's alleged trade secrets do not qualify as trade secrets because Plaintiff did not use reasonable security measures as protection. In providing that opinion, Dr. Cole states that one example of Plaintiff's failure to use reasonable measures was its failure to include a provision in the Delaware Court of Chancery's ("Chancery Court") confidentiality agreement that would have allowed the parties to object to the identification of experts—prior to any potentially confidential information being disclosed to those experts (an "objection provision"). (D.I. 334, ex. 8 at ¶¶ 10, 55-61) Plaintiff contends that these opinions should be excluded because Dr. Cole lacks the relevant expertise to render them, since they are unrelated to his field of technical expertise (i.e., cyber security). (D.I. 331 at 29-30; D.I. 383 at 19)

The Court agrees. Defendants have failed to demonstrate how Dr. Cole has specialized knowledge regarding protective orders in trade secret misappropriation cases (including those used in Chancery Court cases). Indeed, they do not directly address Plaintiff's critique in this regard. (D.I. 364 at 37-38; *see also* D.I. 383 at 19) As an example of the problematic nature of Dr. Cole's testimony here, he opines that Plaintiff's failure to include an objection provision in the Chancery Court's confidentiality agreement demonstrates that "I-Mab failed to meet the industry standard"—but he does not cite to anything in support of that position. (D.I. 334, ex. 8 at ¶ 60) Again, Dr. Cole is not a lawyer. And during his deposition, he acknowledged that his opinions on this topic were drawn from his experience as an expert witness—not his experience as a security consultant. (*Id.*, ex. 9 at 134-35) Yet Defendants do not contend that Dr. Cole is an expert regarding expert witness procedures or protective orders in trade secret misappropriation

cases.  (*See* D.I. 331 at 30)  Thus, Defendants have not met their burden of demonstrating that Dr. Cole has specialized knowledge regarding these opinions, such that this portion of the Motion is granted.  *Cf. Crocs, Inc. v. Effervescent, Inc.*, Civil Action No. 06-cv-00605-PAB-MEH, Civil Action No. 16-cv-02004-PAB-STV, 2022 WL 968974, at *5 (D. Colo. Mar. 30, 2022) ("Crocs does not explain why discussion of the Federal Circuit decision is part of an approved methodology for a marketing expert like Dr. Chiagouris with no legal training or why it is the type of information that a marketing expert would typically rely upon. . . . The Court finds that Dr. Chiagouris is not qualified to opine on the Federal Circuit decision because he is not an attorney, has no formal legal education, and does not support his interpretation of the Federal Circuit decision with any citation to authority.").

        **D.**      **Dr. Cole's Opinions Regarding the Absence of Evidence**

Plaintiff's final argument is that a number of paragraphs (i.e., paragraph nos. 4, 9, 72-80 and 82) of Dr. Cole's rebuttal report should be excluded because it is improper for Dr. Cole to opine therein that the absence of destroyed metadata (due to Dr. Eckelman's deletion of documents) supports Defendants' position that Dr. Eckelman did not use Plaintiff's trade secrets. (D.I. 331 at 31-32; D.I. 383 at 19 ("I-Mab seeks an order excluding Dr. Cole from testifying that Dr. Eckelman did not access or use the documents that he had deleted."))

The Court will not grant this portion of Plaintiff's motion.  As an initial matter, as Defendants noted in their answering brief, (D.I. 364 at 38), the vast majority of the paragraphs at issue do not actually offer an opinion that the absence of destroyed metadata (as a result of Dr. Eckelman's deletion of documents) shows that Dr. Eckelman did not use Plaintiff's trade secrets, (*see* D.I. 334, ex. 8 at ¶ 9 (opining that there is no evidence that Dr. Eckelman shared the trade secrets with anyone), ¶ 72 (stating that Plaintiff's expert Mr. Roffman takes issue with Dr.

Eckelman's deletion of documents), ¶ 74 (responding to Mr. Roffman's analysis regarding the Time Machine Backups), ¶¶ 75-77 (discussing the Appendices and Exhibits to Mr. Roffman's report and rebutting Mr. Roffman's opinions based on the exhibits), ¶ 78 (describing his review of Dr. Eckelman's laptop and hard drive), ¶¶ 79-80 (responding to Mr. Roffman's opinions relating to a chart marked as an exhibit during Dr. Eckelman's deposition), ¶ 82 (responding to Mr. Roffman's opinion regarding Dr. Eckelman's access to the "record of arbitration")). Thus, Plaintiff has provided no basis on which to exclude these opinions.

That leaves just two paragraphs at issue: paragraph 4, in which Dr. Cole opines that "there is no direct evidence of Dr. Eckelman using or accessing I-Mab's alleged confidential documents after Dr. Eckelman was instructed by counsel for TRACON to delete the documents he received" and paragraph 73, in which he opines that "there is no evidence that Dr. Eckelman destroyed evidence of his alleged access and use of I-Mab's confidential information because there is no evidence that such information was wrongfully accessed or used by Dr. Eckelman." (*Id.* at ¶¶ 4, 73) The crux of Plaintiff's motion seems to be that because Dr. Eckelman *improperly* destroyed evidence, Dr. Cole cannot rely on the absence of that destroyed evidence to support his opinion. (D.I. 331 at 31) However, whether Dr. Eckelman "improperly" deleted evidence seems to be very much in dispute between the parties. (*See, e.g.*, D.I. 458 at 7 (Defendants arguing in response to Plaintiff's pending motion for evidentiary sanctions relating to Dr. Eckelman's deletion of materials that "Plaintiff cannot show that Defendants had a duty to preserve the documents at the time they were deleted, that it has suffered prejudice from their deletion, or that Defendants acted with the requisite culpability")) There has not yet been a finding in Plaintiff's favor on this issue, and so the Court does not understand how there would be a basis pursuant to *Daubert* to exclude these opinions.

9

## IV.     CONCLUSION

For the foregoing reasons, the Motion is GRANTED with respect to: (1) Dr. Cole's opinions regarding Dr. Eckelman's state of mind; (2) Dr. Cole's opinion that Plaintiff unreasonably delayed in the filing of this lawsuit; and (3) Dr. Cole's opinions regarding the Chancery Court's Model Order.  It is otherwise DENIED.

Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order.  Any such redacted version shall be submitted no later than **October 24, 2024** for review by the Court.  It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted).  The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated: October 21, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE