IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| I-MAB BIOPHARMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-276-CJB |
| | ) | |
| INHIBRX, INC. and BRENDAN ECKELMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

1. Presently pending before the Court is Plaintiff I-Mab Biopharma's ("I-Mab" or "Plaintiff") Motion for Evidentiary Sanctions (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 37(e) ("Rule 37(e)"). (D.I. 422) Defendants Inhibrx, Inc. ("Inhibrx") and Brendan Eckelman ("Dr. Eckelman" and, collectively with Inhibrx, "Defendants") oppose the Motion. For the reasons set forth below, the Motion is DENIED.

2. Rule 37(e) provides that "[i]f electronically stored information ['ESI'] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court may take steps to cure any prejudice from the loss of the evidence. Fed. R. Civ. P. 37(e). Rule 37(e)(1) provides for curative measures "no greater than necessary to cure the prejudice" when a party's loss of ESI causes prejudice to another party. Fed. R. Civ. P. 37(e)(1); *CIGNEX Datamatics, Inc. v. Lam Rsch. Corp.*, C.A. No. 17-320 (MN), 2019 WL 1118099, at *2 (D. Del. Mar. 11, 2019). This subsection of Rule 37(e) applies to a party's negligent or grossly negligent failure to preserve ESI. *CIGNEX Datamatics*, 2019 WL 1118099, at *2. Rule 37(e)(2), meanwhile, allows for more severe sanctions (including an adverse jury instruction) when the loss of ESI occurred with "intent to deprive another party of the

information's use in litigation." Fed. R. Civ. P. 37(e)(2); *CIGNEX Datamatics*, 2019 WL 1118099, at *2.

3.  With the Motion, Plaintiff moves for evidentiary sanctions based on Dr. Eckelman's deletion of trade secret documents from his laptop in early February 2022 and following the filing of this lawsuit on March 1, 2022. (D.I. 423 at 1-3; D.I. 473 at 1-2) Dr. Eckelman has testified that, to a great degree, he does not recall what I-Mab documents he reviewed. (D.I. 424, ex. 2 at 41-43, 48-50) Plaintiff argues that "Defendants destroyed evidence that would have shown Dr. Eckelman's repeated review of the trade secrets, and now they intend to argue that the absence of this very evidence shows he did not access the trade secrets." (D.I. 423 at 2) Plaintiff moves for: (1) a jury instruction that the jury should infer that the deleted evidence would have been harmful to Defendants' case, pursuant to Rule 37(e)(2); or, alternatively, (2) a curative order preventing Defendants from arguing at trial that the absence of the evidence demonstrates that Dr. Eckelman did not access or use the trade secrets at issue, pursuant to Rule 37(e)(1). (*Id.* at 15-16)

4.  Plaintiff filed its Motion on September 30, 2024—less than one month before trial is set to begin on October 28, 2024. (*See* D.I. 301 at 2; D.I. 422) But Plaintiff did not only recently learn that Dr. Eckelman deleted the documents at issue; rather, Plaintiff has known about this for over two and a half years. In a March 22, 2023 declaration filed in this case in response to Plaintiff's Motion for a Temporary Restraining Order ("TRO"), Dr. Eckelman stated that "[o]n February 3, 2022, counsel for TRACON Pharmaceuticals ['TRACON'] asked me to delete and/or destroy the documents I was previously given, which I did." (D.I. 25 at ¶ 12; *see also id.* at ¶¶ 13-14 (Dr. Eckelman explaining that he had also received a subsequent more limited set of documents from TRACON and that "given that [his] role as an expert has

concluded, [he has] since destroyed all documents related to this case, except for a copy of [his] expert report"); D.I. 26 at ¶ 10 (TRACON's counsel describing the request to Dr. Eckelman to delete and/or destroy all documents and Dr. Eckelman's confirmation of same))[1]  When Plaintiff filed the operative First Amended Complaint in May 2022, it alleged that Dr. Eckelman's spoilation of evidence prevented it from "discovering whether [Dr.] Eckelman shared any of I-Mab's trade secret material with any other individuals affiliated with Inhibrx." (D.I. 49 at ¶¶ 169-71)

5.  Plaintiff has also known for a long time now about other issues related to Dr. Eckelman's deletion of documents that it raises in its Motion. In August 2023, Plaintiff moved the Court for a forensic inspection of Dr. Eckelman's laptop, after a July 2023 production from Defendants demonstrated that "Dr. Eckelman had retained more than 1,600 files from the arbitration, including hundreds of I-Mab confidential documents and the trade secrets at issue in this case." (D.I. 228 at 1-2)[2]  The parties subsequently agreed to a forensic inspection protocol. (D.I. 247)  Fact discovery closed on December 20, 2023.  (D.I. 279)  On January 19, 2024, Plaintiff's forensic expert Mr. Daniel Roffman submitted his report regarding his forensic review of Dr. Eckelman's laptop.  (D.I. 424, ex. 6)  On February 16, 2024, Defendants' forensic expert Dr. Eric Cole submitted his rebuttal report, in which he opined that there is no direct evidence of Dr. Eckelman using or accessing I-Mab's alleged confidential documents after he was instructed to delete them by TRACON's counsel.  (D.I. 334, ex. 8 at ¶¶ 4, 73; *see* D.I. 473 at 10 (Plaintiff

---

[1]  These declarations were all filed in response to Plaintiff's Motion for a TRO, in which Plaintiff had asserted that "[a]s of the filing of this motion, Dr. Eckelman has not returned or destroyed his copies of I-Mab's trade secrets." (D.I. 7 at 9)

[2]  Dr. Eckelman submits that he believed that as of that time, he had deleted all documents as he was instructed and "did not know arbitration documents remained in the Downloads folder" on his laptop.  (D.I. 234 at ¶ 7)

3

asserting that "the undisputed evidence . . . that the metadata no longer exists" was submitted to the Court with "Dr. Cole's rebuttal report")) But Plaintiff's Motion was not filed until many months later, on the eve of trial, such that briefing on the Motion did not close until the *week before* trial. (D.I. 422; D.I. 473)

6. The Court agrees with Defendants that Plaintiff's Motion must be denied because, at a minimum, it is untimely. (D.I. 458 at 18-19)

7. Rule 37(e) does not contain a specific reference to the timing of the filing of a motion seeking spoliation-related sanctions. Nevertheless, courts have explained that an unreasonable delay in the filing of a motion under Rule 37(e) can render such a motion untimely. *See, e.g.*, *Mahboob v. Educ. Credit Mgmt. Corp.*, Case No.: 15-cv-0628-TWR-AGS, 2021 WL 791853, at *2 (S.D. Cal. Mar. 1, 2021) (citing cases)*, report and recommendation adopted in relevant part*, 2021 WL 7448531 (S.D. Cal. Mar. 31, 2021); *Cottle-Banks v. Cox Commc'ns, Inc.*, No. 10cv2133–GPC (WVG), 2013 WL 2244333, at *16 (S.D. Cal. May 21, 2013). Such motions "should be filed as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009); *see also MGA Ent., Inc. v. Harris*, Case No. 2:20-cv-11548-JVS-AGR, 2023 WL 2628225, at *3 (C.D. Cal. Jan. 5, 2023); *Mahboob*, 2021 WL 791853, at *2; *Cottle-Banks*, 2013 WL 2244333, at *16. As one court explained, this is so because "resolution of spoliation motions are fact intensive, requiring the court to assess when the duty to preserve commenced, whether the party accused of spoliation properly complied with its preservation duty, the degree of culpability involved, the relevance of the lost evidence to the case, and the concomitant prejudice to the party that was deprived of access to the evidence because it was not preserved." *Goodman*, 632 F. Supp. 2d at 508. Courts have identified several factors to assess the timeliness of Rule 37(e) motions. *GMS*

*Indus. Supply, Inc. v. G&S Supply, LLC*, Civil Action No. 2:19-cv-324 (RCY), 2022 WL 853626, at *4 (E.D. Va. Mar. 22, 2022); *Goodman*, 632 F. Supp. 2d at 506.  These factors include how long after the close of discovery the relevant spoliation motion has been made; the temporal proximity between a spoliation motion and motions for summary judgment; whether the spoliation motion was made on the eve of trial; whether there was any governing deadline for filing spoliation motions in the scheduling order issued pursuant to Federal Rule of Civil Procedure 16(b) or by local rule; and the explanation of the moving party as to why the motion was not filed earlier.  *GMS Indus. Supply, Inc.*, 2022 WL 853626, at *4; *Goodman*, 632 F. Supp. 2d at 506-08.

8.  Here, as explained above, the Motion was filed approximately nine months after the close of fact discovery, months after the filing of summary judgment motions, and less than one month prior to trial.  Unless there is good reason for it, such a timeline is not fair to Defendants, nor to the Court.[3]  And there is no good reason why events transpired the way they did here.  Indeed, Plaintiff does not really explain *why* it did not file the Motion soon after the issues at play in the Motion came to light—or, at a minimum, in or around February 2024, when Mr. Roffman's and Dr. Cole's expert reports on the subject had been submitted.  Instead, Plaintiff asserts that the Motion is timely because it is directed solely to evidence to be presented at trial.  (D.I. 473 at 9)  But regardless of whether the Motion is directed at trial-related evidence, the underlying serious substantive issues raised in the Motion could have and should have been teed up for the Court well in advance of trial.  Plaintiff also claims that "[m]any of the spoliation

---

[3] As is noted in the caselaw cited above, were the Court to have been required to resolve the Motion on the merits, it might well have had to engage in significant additional proceedings, to include a substantive hearing.  And yet trial starts in two business days from today.

issues came to light during expert discovery[,]" (*id.*)—but as described above, the expert reports at issue were served approximately 10 months ago. There is simply no good reason why Plaintiff's Motion could not have been filed many months earlier—i.e., as soon as reasonably possible after discovery of the facts that underlie the Motion.

9.  Plaintiff also suggests that the motion is timely because "there is no need to re-open discovery nor delay" because the undisputed evidence is that the metadata no longer exists. (D.I. 473 at 10) However, with its reply brief—filed on October 21, 2024, exactly one week before trial is scheduled to begin—Plaintiff also filed a declaration of Mr. Roffman in which he undisputedly includes reference to new facts regarding Dr. Eckelman's alleged search history. (D.I. 475 at ¶ 9; D.I. 499 at 3 (Plaintiff acknowledging that "Mr. Roffman's reports do not specifically call out the discrete search entries for 'c-' and 'r-'" discussed in paragraph 9 of Mr. Roffman's declaration)) On October 22, 2024, Defendants filed a motion to strike that opinion. (D.I. 489) That motion to strike may not even be fully briefed before trial is to begin. This all just underscores the need for a motion like Plaintiff's to be filed as soon is as reasonably possible after discovery of the facts that underlie such a motion.

10. The Court emphasizes that it is *not* concluding here that Dr. Eckelman acted properly (or reasonably) with respect to the conduct at issue in the Motion (especially as to any deletion that occurred after Plaintiff filed this lawsuit). Instead, the Court is simply concluding that the Motion should be denied because it was filed in a (significantly) untimely fashion.

11. That said, in their answering brief, Defendants represented that they do not intend to "argue at trial that 'the absence of metadata' from the deleted documents 'demonstrates that Dr. Eckelman did not access or use the trade secrets.'" (D.I. 458 at 18 (citation omitted)) The Court will hold Defendants to this representation. (*See* D.I. 473 at 1)

12. For these reasons, Plaintiff's Motion is DENIED. *See, e.g.*, *Sagewater, LLC v. Hossfeld*, No. 1:23-cv-00770-MSN-LRV, 2024 WL 4520646, at *2 (E.D. Va. Oct. 17, 2024) (denying a motion for sanctions for spoilation, where the plaintiff "learned about the circumstances surrounding the disposal of the 2018 laptop and the potential for additional USBs in Hossfeld's possession on April 25, 2024. . . . [y]et [the plaintiff] waited *three more months* before it moved for sanctions on those very issues, missing the discovery-related motions deadline. [Plaintiff] had no good reason for waiting until after the discovery deadline to file its motion regarding allegedly missing evidence") (emphasis in original); *Mahboob*, 2021 WL 791853, at *2 ("Because waiting a year and a half to bring a spoilation motion is unreasonable . . . the portion of the motion concerning call data should be denied as untimely."); *Cottle-Banks*, 2013 WL 2244333, at *16 (denying plaintiff's motion for spoilation sanctions where plaintiff filed the motion "almost nine months" after plaintiff learned of the relevant facts).[4]

13. Because this Memorandum Order may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Memorandum Order. Any such redacted version shall be submitted no later than **October 29, 2024** for review by the Court. It should be accompanied by a motion for redaction that shows that the presumption of public access to judicial records has been rebutted with respect to the proposed redacted material, by including a

---

[4] As was noted above, Defendants filed a "Motion to Strike and Preclude the October 21, 2024 Opinion of Daniel Roffman" ("Motion to Strike"). (D.I. 489) Although the Court has mentioned that opinion of Mr. Roffman and the Motion to Strike earlier in this decision, in light of the nature of its ruling herein, the Court did not need to address the substance of the opinion or the Motion to Strike. To the extent that the Motion to Strike remains unresolved by then, the parties may choose to raise it during their allotted time at the 8:30 a.m. hearing with the Court on Monday. The Court will not be resolving the Motion to Strike prior to then.

factually-detailed explanation as to how that material is the "kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Memorandum Order.

Dated:  October 24, 2024

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE